## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAND CANYON CORPORATION F/K/A OPTION ONE MORTGAGE CORPORATION | * | |
| | * | Civil Action No.: 19-2815 |
| Plaintiff | * | |
| v. | * | |
| THE BANK OF NEW YORK MELLON | * | |
| and | * | |
| THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR AMRESCO RESIDENTIAL SECURITIES CORPORATION MORTGAGE LOAN TRUST 1997-3 | * | |
| | * | |
| Defendants | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sand Canyon Corporation F/K/A Option One Mortgage Corporation ("Option One"), by and through its undersigned counsel, pursuant to the Federal Rules of Civil Procedure, files this Complaint for Declaratory Relief, and, in support thereof, states:

### STATEMENT OF THE PARTIES

1.      Option One is a corporation organized under the laws of the State of California and maintains its principal place of business at 7595 Irvine Center Drive, Suite 100, Irvine, California 92618.

2.      The Bank of New York Mellon ("BNYM") is a corporation organized under the laws of the State of New York and is authorized to transact a trust and banking business. BNYM's principal office is located at One Wall Street, New York, New York 10286.

3.      The principal office of the Bank of New York Mellon, as Trustee for AMRESCO Residential Securities Mortgage Loan Trust 1997-3 (the "Trustee") is 101 Barclay Street, New York, New York 10286.

## STATEMENT OF JURISDICTION AND VENUE

4.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between the parties.

5.      The amount in controversy is in excess of $75,000, exclusive of interest and costs as BNYM and/or the Trustee maintain that they have incurred more than $75,000 in attorneys' fees and costs in connection with the case styled as *Dwight Raney v. Raymond T. Berry, et al.*, Case No.: 24-C-15-005604 LP (the "*Raney* Case"), which was pending in the Circuit Court for Baltimore City, Maryland (the "Circuit Court").

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because the *Raney* Case was pending within the District of Maryland.

## STATEMENT OF FACTS

### The Property and Mortgage Loan

7.      Raymond T. Berry ("Berry") purchased 3420 Berwyn Avenue, Baltimore, Maryland (the "Property") on March 21, 1997.  Option One purchased the Berry's mortgage loan (the "Mortgage Loan") on April 29, 1997 and sold it on June 17, 1997.  It was later securitized on September 17, 1997.  The Mortgage Loan was, and is part of the pool of loans in the AMRESCO Residential Securities Corporation Loan Trust 1997-3.   The Mortgage Loan was serviced by Option One.

8.      Berry fell behind on his mortgage payments and foreclosure on the Property was

2

initiated in March 1998. Berry filed for bankruptcy protection on September 18, 1998, but the stay was lifted and foreclosure proceedings were reinitiated in April 1999. On June 18, 1999, the Property was auctioned and sold to the Trustee. The sale was ratified and confirmed by the Circuit Court. The Property was later sold to Winston Calloway ("Calloway") on March 16, 2001.

9.      Pursuant to a Purchase Agreement, dated March 17, 2008, by and among Option One, certain of Option One's affiliates and AH Mortgage Acquisition Co., Inc. ("AHM"), Option One and such affiliates sold certain assets comprising substantially all of Option One's business, which was a mortgage servicing business, to AHM, a predecessor to Ocwen Financial Corporation ("Ocwen"), which is the current servicer.

10.     On April 22, 2008, pursuant to the Pooling and Servicing Agreement Relating to AMRESCO Residential Securities Corporation Mortgage Loan Trust 1997-3 (the "PSA"), a copy of which can be found at https://sec.edgar-online.com/amresco-residential-securities-corp-mort-loan-trust-1997-3/8-k-current-report-filing/1997/10/01/section9.aspx, Option One notified Trustee of the transaction and requested Trustee's consent to the appointment of AHM as the successor servicer. Trustee acknowledged the servicing transfer on April 29, 2008. Thus, at most, Option One is a predecessor servicer.

### The *Raney* Case

11.     On or about November 9, 2015, during Ocwen's tenure as the servicer, Dwight Raney ("Raney") filed his Complaint in the Circuit Court against BNYM, Berry and Calloway alleging personal injury due to lead paint exposure at the Property between 1996 and 2001. Raney alleged that Berry, BNYM and Calloway negligently owned, operated, and made available the Property. BNYM never moved to dismiss the lead paint case on the ground that it had been

wrongly sued in its individual capacity, nor did BNYM request that the real party in interest be named.  Raney never amended the Complaint to name Trustee as a defendant.

12.     A year later, on or about November 10, 2016, BNYM filed its Third-Party Complaint against Option One, alleging claims of common law indemnification, contractual indemnification, and contribution.   Option One timely answered the Third-Party Complaint. Raney never amended his Complaint to name Option One as a Defendant.

13.     After the close of discovery, Raney and BNYM filed for summary judgment in the lead paint case and Option One filed for summary judgment as to the Third-Party Complaint. Plaintiff's motion for partial summary judgment was granted on December 6, 2017. BNYM's and Option One's motions were denied, and both parties moved for reconsideration.  Raney moved to strike BNYM's motion for reconsideration, which was granted as BNYM's motion was untimely. Option One's motion for reconsideration was never taken up by the Circuit Court.

14.     Option One filed a motion to sever the Third Party Complaint from the lead paint case, which was granted.  The Circuit Court ordered that the Third Party Complaint would be set in for a separate trial that would begin no sooner than the conclusion of the trial of the lead paint case.

15.     The lead paint trial was scheduled to begin on July 23, 2018.  On July 20, 2018, the parties requested a postponement and one was granted.  Raney and BNYM reached a resolution, and a stipulation of dismissal with prejudice was filed on August 3, 2018.  Later, on September 24, 2018, BNYM and Option One filed a stipulation of dismissal without prejudice as to any indemnification claims.  Indemnification remains unresolved and disputed.

### The *Hector* Case

16.     In *Ashley Hector, et al. v. Sharlene M. Smith, et al.*, another lead paint case in the Circuit Court, the plaintiff sued BNYM, maintaining that it was the owner of the subject property. There, as in the *Raney* Case, the complaint caption identified BNYM, and not BNYM as trustee as a defendant.

17.     BNYM and its counsel, the same attorneys as in the *Raney* Case, successfully argued that BNYM in its individual capacity is an entirely separate and distinct legal entity from BNYM in its capacity as trustee.  The Circuit Court agreed and granted summary judgment in favor of BNYM, holding that BNYM could not be held liable in its individual capacity for actions taken solely in its capacity as trustee.

### The PSA

18.     On September 1, 1997, Option One, Trustee, and others entered into the PSA. BNYM was not, and is not a party to the PSA.  The primary purpose of the PSA was to pool specific mortgage loans previously owned by AMRESCO Residential Capital Markets, Inc. into a single trust, with the mortgages being the principal assets of the Trust Estate.  As part of the formation of this trust, a portion of mortgage loans therein were designated for servicing to each of the three mortgage loan servicers.

19.     No provision in the PSA requires the Trustee to defend a lawsuit on behalf of the Trust.  Section 2.03 of the PSA appoints the Trustee and lists its required duties as issuing the Trust Certificates, holding the Mortgage Loans and other Trust property, and distributing required payments to the Certificateholders.  (PSA, at § 2.03).  Likewise, Section 10.01(a)(i)(A) obligates the Trustee to "perform such duties and only such duties as are specifically set forth in this

Agreement, and no implied covenants or obligations shall be read into this Agreement against the Trustee." (PSA, at § 10.01).

20.     Section 8.30 of the PSA provides:

> Each Servicer agrees to indemnify and hold the Trustee, the Seller and the Depositor harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments and any other costs, fees and expenses that the Seller, the Depositor, and the Trustee may sustain in any way caused by or arising out of the negligent failure of such Servicer, or Subservicer appointed by it, to perform its duties and service the Mortgage Loans in compliance with the terms of this Agreement and which, in the case of the Seller or the Depositor, materially and adversely affects such party. Each Servicer shall immediately notify the Trustee, the Seller, the Depositor and the Rating Agencies *if a claim is made by a third party with respect to this Agreement, and the relevant Servicer may assume* (with the consent of the Trustee) *the defense of any such claim* and pay all expenses in connection therewith, including reasonable counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against the Seller, the Trustee and the Depositor. The Trustee shall reimburse such Servicer for amounts in the related Principal and Interest Account for all amounts advanced by it pursuant to the preceding sentence except when the claim relates directly to the failure of such Servicer to service and administer the Mortgage Loans in compliance with the terms of this Agreement.

(PSA, at § 8.30)(emphasis supplied).

21.     The Servicer is the trust agent with the duty to defend an action against the Trust by virtue of the Trust's ownership of a Mortgage Loan. This Servicer's duty is grounded in several provisions of the PSA:

- Section 8.0l(a) appoints the Servicer to "service and administer the Mortgage Loans" to a fiduciary-level standard, i.e., as though it were the owner of the loans. That section further provides that the Servicer "shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such

6

servicing and administration which it may deem necessary or desirable." (PSA, at § 8.01(a)).

- Section 8.0l(e) provides to the Servicer "a power of attorney to carry out its servicing and administrative duties hereunder, on behalf of itself, the Owners and the Trust or any of them." (PSA, at § 8.01(e)).

- Section 8.09(b) obligates the Servicer initially to pay "reasonable and necessary 'out-of-pocket' costs and expenses incurred in the performance of its servicing obligations, including, . . . (ii) any enforcement or judicial proceedings, including foreclosures," designating each amount paid a "Servicing Advance." (PSA, at § 8.09(b)). Section 7.03(j) permits the Servicer to recover unreimbursed Servicing Advances from certain excess monthly cash flows. (PSA, at § 7.03(j)).

- Section 8.25 provides that the Servicer shall not "be under any obligation to appear in, prosecute or defend any legal action that is not incidental to its duties" under the PSA. (PSA, at § 8.25). This further demonstrates, by negative implication, that the Servicer is obliged to defend a legal action that is incidental to its duties.

22. Section 1.01 of the PSA defines a "Servicer" or "Servicers" as "Advanta, Long Beach, Option One and their permitted successor and assigns. Any reference to Servicers or Servicer shall mean the related Servicer with respect to any Mortgage Loan or Mortgage Loan Servicing Group." (PSA, at § 1.01). The phrase "the related Servicer with respect to any Mortgage Loan" uses singular language and thereby, importantly, signifies that each Mortgage Loan subject to the PSA has only a single "Servicer" at any given time. The definition of "Servicer" expressly includes Option One and its "permitted successors and assigns." Conversely, the definition makes no mention of predecessors. Had the parties wished to include predecessors in the definition of a

7

"Servicer," or impose any obligations upon predecessor servicers generally, they would have expressly done so in Section 1.01. The definition of "Servicer" in section 1.01 means the initial three Servicers or the successors and assigns of those three "Servicers," as applicable.

23.     The PSA allows for liability of a predecessor servicer in one instance, which does not apply here. Section 8.21(k) reads: "The appointment of a successor Servicer (including the Trustee) shall not affect any liability of the predecessor Servicer which may have arisen under this Agreement prior to its termination as Servicer[.]" (PSA, at § 8.21(k)). However, section 8.21(k) only applies if there was a termination of a Servicer pursuant to section 8.20 or a resignation of a Servicer pursuant to section 8.21, and then an appointment of a successor Servicer by the Trustee.

24.     Section 8.20(a) provides:

> The Trustee (acting upon the request of the Owners of the majority of the Percentage Interests of the Offered Certificates then Outstanding as a whole and not on a Class by Class basis) or the Seller may immediately remove the related Servicer (including any successor entity serving as the Servicer) upon the occurrence of any of the following events and the expiration of the related cure period (provided, that the occurrence of any such events with respect to one Servicer shall be cause to remove only such Servicer)[.]

(PSA, at § 8.20)

25.     Section 8.21(a) reads, in part, as follows:

> Upon any Servicer's receipt of notice of termination pursuant to Section 8.20 or such Servicer's resignation in accordance with the terms of this Section 8.21, the predecessor Servicer shall continue to perform its functions as Servicer under this Agreement, in the case of termination, only until the date specified in such termination notice or in accordance with Section 8.20(d), if applicable, or, if no such date is specified in a notice of termination, until receipt of such notice and, in the case of resignation, until the earlier of (x) the date 45 days from the delivery to the Seller, the Trustee of written notice of such resignation (or written confirmation of such notice) in accordance with the terms of this Agreement and (y) the date upon which the predecessor Servicer shall become unable to act as Servicer, as specified in the notice of resignation and accompanying opinion of counsel.

(PSA, at § 8.21).

26.     The appointment provision states:  "In the event of any Servicer's *resignation or termination* hereunder, the Trustee shall appoint a successor Servicer and the successor Servicer shall accept its appointment by execution of a written assumption in form acceptable to the Trustee and the Seller, with copies of such assumption to the Trustee and the Rating Agencies[.]" (PSA, at § 8.20)(emphasis supplied).

27.     Here, there was no termination or resignation and then an appointment.  Rather, Option One made an assignment pursuant to Section 8.19, which reads: "No Servicer may assign its obligations under this Agreement (except pursuant to Section 8.27 hereof), in whole or in part, unless it shall have first obtained the prior written consent of the Seller and the Trustee, which such consent shall not be unreasonably withheld; . . ." (PSA, at § 8.19).

### FIRST CAUSE OF ACTION

**Declaratory Relief – Duty or Obligation to Indemnify (As to BNYM)**

28.     Option One adopts and incorporates by reference each and every preceding paragraph as if fully set forth herein, and alleges the following additionally.

29.      BNYM was not a proper defendant in the *Raney* Case.  BNYM could not have been held liable in its individual capacity for actions taken solely by the Trustee.

30.     As an improper party with no liability in the *Raney* Case, there are no bases for BNYM to seek indemnification from Option One.

31.     BNYM has demanded indemnification from Option One.  Option One has refused, and continues to refuse to indemnify BNYM.

32.     An actual bona fide controversy exists between Option One, on the one hand, and BNYM, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties regarding Option One's duty or obligation to indemnify BNYM as to the *Raney* Case.

<u>SECOND CAUSE OF ACTION</u>

**Declaratory Relief – Duty or Obligation to Indemnify (As to Trustee)**

33.     Option One adopts and incorporates by reference each and every preceding paragraph as if fully set forth herein, and alleges the following additionally.

34.     Trustee was not a defendant in the *Raney* Case, and thus there are no bases to seek indemnification from Option One.

35.     To the extent Trustee seeks indemnification, it cannot pursue a common law indemnification claim because the PSA specifically addresses indemnification as to the subject mortgage loan.

36.     Trustee was not required, and should not have defended the *Raney* Case on behalf of the Trust.

37.     Option One has no contractual obligation to indemnify Trustee as Option One is not a Servicer pursuant to the PSA.

38.     Trustee has demanded indemnification from Option One.  Option One has refused, and continues to refuse to indemnify Trustee.

39.     An actual bona fide controversy exists between Option One, on the one hand, and Trustee, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties regarding Option One's duty or obligation to indemnify Trustee as to the Raney Case.

**PRAYER FOR RELIEF**

WHEREFORE, Option One requests that this Court enter judgment in its favor as follows:

a.      A judicial declaration that Option One has no duty or obligation to indemnify BNYM for any attorney's fees and costs incurred in connection with the *Raney* Case.

b.      A judicial declaration that Option One has no duty or obligation to indemnify Trustee for any attorney's fees and costs incurred in connection with the *Raney* Case.

c.      Award of costs and reasonable attorneys' fees incurred herein; and

d.      Other and further relief as this Court may deem just and proper.

Respectfully submitted,

_____/s/ Patrick R. Buckler_____
Patrick R. Buckler (Fed Bar No. 25943)
Womble Bond Dickinson (US) LLP
100 Light Street, 26th Floor
Baltimore, Maryland 21202
(Tel) 410.545.5800
(Fax) 410.545.5801
patrick.buckler@wbd-us.com

*Counsel for Plaintiff, Sand Canyon Corporation*
*F/K/A Option One Mortgage Corporation*

WBD(US) #47372185v3

11