IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAND CANYON CORPORATION F/K/A/ OPTION ONE MORTGAGE CORPORATION,

Plaintiff/Counter-Defendant,

v.

THE BANK OF NEW YORK MELLON, et al.,

Defendants/Counter-Plaintiffs.

Civil Action No.: GLR-19-2815

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff and Counter-Defendant Sand Canyon Corporation, formerly known as Option One Mortgage Corporation's ("Option One"), Motion to Dismiss Counterclaim (ECF No. 11). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

## I. BACKGROUND[1]

Defendant and Counter-Plaintiff the Bank of New York Mellon ("BNYM") in its capacity as Trustee of the AMRESCO Trust ("Trustee" or "BNYM as Trustee"), Option One, and others entered into a Pooling and Servicing Agreement ("PSA") dated September

[1] Unless otherwise noted, the Court takes the following facts from Defendants' Counterclaim and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). To the extent the Court discusses facts not alleged in the Counterclaim, they are uncontroverted and viewed in the light most favorable to Defendants/Counter-Plaintiffs.

1, 1997. (Countercl. ¶ 8, ECF No. 8). The PSA created the AMRESCO Residential Securities Corporation Mortgage Loan Trust 1997-3 (the "Trust") and established the rights and responsibilities of the contracting parties, including the right to indemnification.[2] (Id.). The PSA also appointed Option One as one of the Trust's mortgage loan servicers ("Servicers"), a role Option One fulfilled until April 2008 when it exercised its right under the PSA to assign its contractual obligations to a new mortgage servicer, AH Mortgage Acquisition Co., Inc. ("AH Mortgage"). (Id. ¶ 25). BNYM in its individual capacity has never been a party to the PSA. (Id. ¶ 8).

On June 18, 1999, the Trust purchased a property at 3420 Berwyn Avenue in Baltimore, Maryland (the "Property") at a foreclosure auction. (Id. ¶¶ 10, 18). The Property was a Trust asset that Option One, as one of the Servicers, was responsible for maintaining under the terms of the PSA. (Id. ¶¶ 18–20). In March 2001, the Trust sold the Property to Winston Calloway. (Id. ¶ 19).

During the period between June 1999 and 2001, Dwight Raney claims that he was injured through exposure to lead paint at the Property. (Id. ¶¶ 10, 36). On November 9, 2015, Raney sued Raymond T. Berry, Calloway, and BNYM in its individual capacity in the Circuit Court for Baltimore City, Maryland (the "Raney Case"), seeking compensation for those injuries.[3] (Id. ¶ 10); see also Raney v. Berry, No.: 24-C-15-005604 LP

[2] Neither party attached the PSA as an exhibit. However, it is publicly available at https://sec.edgar-online.com/amresco-residential-securities-corp-mort-%20loan-trust-1997-3/8-k-current-report-filing/1997/10/01/section9.aspx.

[3] Raymond T. Berry purchased the Property on March 21, 1997. (Compl. Declaratory J. ["Option One Compl."] ¶ 7, ECF No. 1). Option One purchased Berry's mortgage loan on April 29, 1997 and sold it on June 17, 1997. (Id.). It was later securitized

(Cir.Ct.Balt.Cty.Md. filed Nov. 9, 2015). Raney alleged the Property was owned and/or operated by Berry, Calloway, and BNYM during the relevant time frame. (Id.).

During the litigation, BNYM denied all liability to Raney, arguing that it never owned, operated, maintained, or otherwise controlled the Property in its individual capacity. (Id. ¶ 12). BNYM further argued that the correct legal entity was BNYM as Trustee. (Id. ¶ 15). BNYM subsequently filed a third-party complaint against Option One for common law indemnification, contractual indemnification, and contribution. (Id. ¶ 30). Option One moved for summary judgment, but the Circuit Court denied its motion. (Id. ¶¶ 31–32). With trial approaching and Option One refusing to indemnify BNYM, BNYM resolved the Raney Case with the assistance of the Trust, but not before incurring thousands of dollars in attorneys' fees and litigation costs.[4] (Id. ¶ 34).

On September 24, 2019, Option One filed the present action against BNYM in its individual capacity and as Trustee. (ECF No. 1). Option One seeks a declaration that it has no duty or obligation to indemnify BNYM in its individual capacity or as Trustee for fees incurred in defending the Raney Case. (Compl. ¶¶ 28–39; id. at 11).

On November 11, 2019, BNYM filed an Answer and Counterclaim against Option One. (ECF No. 8). The Counterclaim alleges: common law indemnification as to BNYM in its individual capacity (Count I) and as Trustee (Count II), and contractual indemnification to BNYM as Trustee (Count III). (Countercl. ¶¶ 35–54). BNYM requests

---

on September 17, 1997. (Id.). The loan is part of the pool of loans owned by the Trust and serviced by Option One. (Id.).

[4] The Counterclaim does not explain how BNYM resolved the Raney Case.

all damages, costs, expenses, and attorneys' fees incurred in the Raney Case, plus interest, along with its costs, expenses, and attorneys' fees in the instant case. (Id. at 23).

On December 9, 2019, Option One filed its Motion to Dismiss Counterclaim. (ECF No. 11). BNYM filed an Opposition on December 30, 2019. (ECF No. 14). On January 14, 2020, Option One filed a Reply. (ECF No. 15).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). When reviewing a Rule 12(b)(6) motion to dismiss a counterclaim, "[t]his Court applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint." First Data Merch. Servs. Corp. v. SecurityMetrics, Inc., No. RDB-12-2568, 2013 WL 6234598, at *3 (D.Md. Nov. 13, 2013) (citing Shoregood Water Co. v. U.S. Bottling Co., No. RDB-08-2470, 2010 WL 1923992, at *1–2 (D.Md. May 11, 2010)).

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## B. Analysis

### 1. Responsible Servicer

Option One contends that BNYM cannot seek contractual indemnification from it because it is no longer a Servicer under the PSA and was not a Servicer at the time the Raney Case was filed.[5]

[5] Ocwen Financial Corporation ("Ocwen") succeeded AH Mortgage as Servicer to the Property and was its Servicer at the time Raney filed his lawsuit.

BNYM argues that because the Trust owned the Property from 1999 to 2001, Option One was the Servicer who was responsible for the Property's maintenance when Raney was allegedly injured, thereby obligating Option One to indemnify BNYM in its individual capacity and as the Trustee for the costs incurred in the Raney Case. BNYM further argues that although Option One later transferred its mortgage servicing business to a new Servicer—AH Mortgage, later succeeded by Ocwen—Option One remained liable to the Trust for any injuries that occurred during its tenure as Servicer. Conversely, Option One avers that Ocwen was the Servicer when Raney filed suit in 2015 and that Raney never sued Option One, even after BNYM filed a third-party complaint against it in Circuit Court. The Court agrees with BNYM.

The Trust owned the Property following its purchase at the June 1999 auction and preceding its sale to Calloway in March 2001, thereby bestowing Option One, as Servicer to the Trust, with the right to control the Property. Thus, between 1999 and 2001—the time period that Raney claims to have been injured at the Property—Option One was responsible for the day-to-day operation, maintenance, and conservation of the Property pursuant to § 8.09(b) of the PSA.

Under § 8.09(b), Option One was obligated to "pay all customary, reasonable and necessary 'out-of-pocket' costs and expenses incurred in the performance of its servicing obligations, including, but not limited to, the cost of (i) Preservation Expenses, (ii) any enforcement or judicial proceedings, including foreclosures, and (iii) the management and liquidation of REO Property," among other things. The PSA defines "Preservation Expenses" as "[e]xpenditures made by a Servicer in connection with a foreclosed Mortgage

Loan prior to the liquidation therefor, including, without limitation, expenditures for real estate property taxes, hazard insurance premiums, property restoration or preservation." (PSA at 43) (emphasis added). Consistent with the directive in § 8.09(b), Option One was also obligated to "manage, conserve, protect, and operate" the Property under § 8.13(a).

It is undisputed that the Trust owned the Property from 1999 to 2001 and that Option One was the Servicer during that time. As such, §§ 8.09(b) and 8.13 obligated Option One to maintain the Property during those years. However, the parties disagree as to whether Option One's liability to the Trust for injuries accruing during Option One's tenure as Servicer automatically terminated or transferred upon assignment of its mortgage servicing business to AH Mortgage in 2008.

The parties both cite § 8.21(k) in support of their divergent positions. Section 8.21(k) provides, in relevant part:

> The appointment of a successor Servicer (including the Trustee) shall not affect any liability of the predecessor Servicer which may have arisen under this Agreement prior to its termination as Servicer (including, without limitation, any deductible under an insurance policy) nor shall any successor Servicer (including the Trustee) be liable for any acts or omissions of the predecessor Servicer or for any breach by such Servicer of any of its representations or warranties contained herein or in any related document or agreement.

Option One contends that § 8.21(k) only applies if there is a removal of a Servicer pursuant to § 8.20 or a resignation of a Servicer pursuant to § 8.21, and then an appointment of a successor Servicer by the Trustee. Section 8.20(a) allows the Trustee, under specific circumstances, to "immediately remove the related Servicer (including any successor entity serving as the Servicer)" upon the occurrence of specifically enumerated events, none of

which apply here. Section 8.21(a) outlines the timeframe under which a Servicer is obligated to continue performing its function upon termination or resignation. Option One asserts that the assignment of its contractual obligations to AH Mortgage falls outside the scope of § 8.21(k) because that transaction was not precipitated by Option One's removal, resignation, or termination.

BNYM disagrees with Option One's interpretation of § 8.21(k). BNYM also argues that, in entering into the March 2008 purchase agreement with Option One, AH Mortgage could not have agreed to assume any liabilities with respect to the Property, as the Property was extinguished as a Trust asset upon sale to Calloway seven years before Option One and AH Mortgage executed their agreement.

The Court declines to settle this aspect of the parties' dispute. First, neither party cites a provision in the PSA that identifies what, if any, continuing liability a Servicer has to the Trust when that Servicer does not resign and is not removed or terminated but simply assigns its obligations under the PSA with the Trust's approval as required by § 8.19.[6] To the extent the PSA is silent on the matter, the Court cannot craft a provision addressing this contingency.

Second, the PSA is clear that "[e]ach Servicer agrees to indemnify" the Trustee "against <u>any and all claims</u>, . . . legal fees and related costs, judgments and any other costs, fees and expenses that the . . . Trustee may sustain <u>in any way</u> caused by or arising out of

[6] Under § 8.19: "No Servicer may assign its obligations under this Agreement (except pursuant to Section 8.27 hereof), in whole or in part, unless it shall have first obtained the prior written consent of the Seller and the Trustee, which such consent shall not be unreasonably withheld."

the negligent failure of such Servicer . . . to perform its duties" pursuant to the terms of the PSA. (PSA § 8.30) (emphasis added). Section 8.30 does not include a temporal limitation on a Servicer's obligation to indemnify the Trustee in the event its negligence gives rise to a claim that damages the Trustee. Similarly, § 8.30 does not contain language explicitly stating or implying that a Servicer's obligation to indemnify the Trustee for claims arising during its tenure is terminated upon assignment to a successor. Thus, to the extent the PSA intended to limit a Servicer's obligation to indemnify following assignment of its contractual obligations, neither § 8.21(k) nor § 8.30 clearly and unequivocally accomplish that goal.

In sum, BNYM plausibly alleges that Option One, not Ocwen, was the Servicer responsible for indemnification because Option One was responsible for managing and otherwise preserving the Property from 1999 to 2001—the time period that Raney was allegedly injured at the Property. Moreover, Option One has not cited a provision in the PSA explicitly terminating its liability for injuries allegedly sustained during its tenure as Servicer upon Option One's assignment of its contractual obligations.

**2. Common Law Indemnification (Counts I and II)**

BNYM argues it is entitled to tort-based indemnification from Option One because Option One was negligent in its duties with respect to the Property. The Court will analyze these claims under Maryland law.[7] The result would be the same under New York law,

[7] In diversity actions, a federal court must apply the law of the forum state, including its choice of law rules. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). For tort-based claims, Maryland applies the law of the state where the alleged harm occurred. Johnson-Howard v. AECOM Special Missions Servs., Inc., 434 F.Supp.3d

however, as both states recognize and apply similar standards to the doctrine of tort-based indemnification. See Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124, 127 (4th Cir. 1988) ("[T]ort-based right to indemnification [is] found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." (quoting Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986))); Emerson Enters., LLC v. Kenneth Crosby N.Y., LLC, No. 03-CV-6530, 2009 WL 3190445, at *11 (W.D.N.Y. Apr. 2, 2009) ("[O]ne is entitled to implied indemnification where he or she has committed no wrong but is held vicariously liable for the wrongdoing of another." (quoting Westbank Contracting, Inc. v. Rondout Valley Cent. Sch. Dist., 847 N.Y.S.2d 780, 782 (App. Div. 2007))).

According to BNYM, it is entitled to tort-based indemnification because it defended and resolved the Raney Case in its individual capacity even though (1) its relationship to the Property was only as Trustee, without any day-to-day responsibilities with respect to the Property, and (2) Raney was injured based solely on Option One's negligent failure to restore, manage, conserve, protect, and operate the Property, as it was required and paid to do.[8] BNYM further argues that neither Maryland nor New York law requires that a proposed indemnitor be adjudged liable to the plaintiff.

---

359, 371 (D.Md. 2020). Because the alleged events in the Raney Case and a substantial part of the events or omissions giving rise to the counterclaims occurred in Maryland, the substantive tort law of Maryland law governs BNYM's tort-based indemnification claims. See Hauch v. Connor, 453 A.2d 1207, 1209 (Md. 1983).

[8] In Count I of the Counterclaim, BNYM does not allege any facts suggesting any special factors or a special relationship between it and Option One. To the contrary, it

Option One maintains that Raney should have sued the Trust, as the owner of the Property, rather than BNYM in its individual capacity. Option One thus reasons that because BNYM was erroneously sued in its individual capacity and failed to extricate itself from the Raney litigation, it defended a lawsuit that it should not have, rendering it solely responsible for any costs associated with that litigation.

Whether or not Raney should have named the Trust or BNYM individually has no bearing on Option One's liability to BNYM. See, e.g., Walk v. Hartford Cas. Ins. Co., 852 A.2d 98, 106 (Md. 2004) (distinguishing "the duty to defend," which depends "only upon the facts as alleged" and the "duty to indemnify," which "depends upon liability"). To the contrary, Option One's obligation to indemnify BNYM is an independent, tort-based obligation that may have arisen by virtue of the fact that BNYM was financially responsible for defending Raney's claim, which accrued when Option One was responsible for the upkeep and maintenance of the Property.

Nonetheless, BNYM is not entitled to the relief it seeks because it presupposes an outcome that has not occurred, specifically a determination that Option One was indeed negligent in the maintenance and operation of the Property when Raney was injured. While the Court is obligated to construe the factual allegations in BNYM's Counterclaim as true and in the light most favorable to BNYM, Albright, 510 U.S. at 268, the Court is not

emphasizes that "BNYM in its individual capacity had no relationship with the Property or the parties in the Raney Case." (Counterclaim ¶ 37). BNYM does reference the PSA in Count I, (see id. ¶ 8), but it was not a party to it and thus the PSA could not constitute evidence of any relationship, special or otherwise, between BNYM and Option One. Without any such special factors or a special relationship, BNYM would not be entitled to indemnification based on either Maryland or New York's "implied in fact" doctrine.

obligated to accept legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678. Here, BNYM repeatedly asserts, in a wholly conclusory manner, that Option One was "negligent." (Countercl. ¶¶ 38, 40, 44, 46, 48, 52, 54, ECF No. 8). No court has found Option One negligent in its maintenance of the Property; Option One has never admitted that it was negligent; and BNYM does not point to any facts that would support this assertion.

Raney never sued Option One and Option One never admitted liability for Raney's injuries, leaving Option One's liability unresolved. Equally fatal is BNYM's claim, as alleged in its Counterclaim, that it was never liable for Raney's injuries in its individual capacity, as it was not involved in the maintenance or control of the Property.

BNYM cannot rely on a tort-based indemnification theory to recover the litigation costs associated with the Raney Case when there has been no meritorious determination or admission that Option One acted negligently and where BNYM has not introduced facts to establish such negligence. See Pyramid Condo. Assoc. v. Morgan, 606 F.Supp. 592, 596 (D.Md. 1985) ("A right to indemnity is commonly recognized where, although both parties are negligent, the negligence of the indemnitee is not considered as serious as that of the indemnitor."); Rosado v. Proctor & Schwartz, Inc., 484 N.E.2d 1354, 1356 (N.Y. 1985) (explaining that "an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them").

At bottom, BNYM in its individual capacity has failed to state a claim for tort-based indemnification under either Maryland or New York law. For the same reasons, BNYM as

Trustee also fails to state a claim. BNYM's claims for tort-based indemnification in its individual capacity and as Trustee will be dismissed. Because BNYM has not adequately alleged facts supporting Option One's purported negligence, its claims for tort-based indemnification may not proceed.

**3. Contractual Indemnification (Count III)**

Indemnification may also arise through contract. See Pulte Home Corp. v. Parex, Inc., 942 A.2d 722, 730 (Md. 2008); Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 15 (2d Cir.1993). Here, BNYM as Trustee seeks contractual indemnification, noting that it and Option One were parties to the PSA, which required Option One, as Servicer, to indemnify and hold the Trustee harmless "against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses" arising out of Option One's negligent failure to perform its duties as Servicer. (PSA § 8.30). The Trustee further argues that it incurred damages because it sought to defend the Raney Case and became a party to the resolution. The Court is not persuaded.

The limiting language in the PSA's indemnification clause is dispositive. Pursuant to § 8.30, the Servicer is obligated to indemnify the Trust for claims arising out of its negligent failure to perform its duties under the PSA. However, as set forth above, the Trustee fails to plead sufficient facts demonstrating Option One's negligence. Based on the wholly conclusory assertion that Option One was "negligent," this Court is unable to assess whether Option One is contractually obligated to indemnify the Trustee. Accordingly, the Trustee has failed to state a claim for contractual indemnification, and the claim will be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff and Counter-Defendant, Sand Canyon Corporation, formerly known as Option One Mortgage Corporation's ("Option One"), Motion to Dismiss Counterclaim (ECF No. 11). A separate Order follows. Entered this 3rd day of September, 2020.

/s/
George L. Russell, III
United States District Judge