IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAND CANYON CORPORATION f/k/a
OPTION ONE MORTGAGE
CORPORATION,

       Plaintiff/Counter-Defendant,

v.                               Civil Action No.: GLR-19-2815

THE BANK OF NEW YORK MELLON,
et al.,

       Defendants/Counter-Plaintiffs.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Dismiss Amended Counterclaim and Motion for Entry of Final Declaratory Judgment by Plaintiff/Counter-Defendant Sand Canyon Corporation, formerly known as Option One Mortgage Corporation ("Option One") (ECF No. 28). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

## I.    BACKGROUND[1]

### A.    Factual Background

Defendant/Counter-Plaintiff The Bank of New York Mellon, as Trustee for AMRESCO Residential Securities Mortgage Loan Trust 1997-3's ("BNYM as Trustee"),

---

[1] Unless otherwise noted, the Court takes the following facts from Defendants/Counter-Plaintiffs' Amended Counterclaim and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). To the extent the Court

Option One, and others entered into a Pooling and Servicing Agreement ("PSA") dated September 1, 1997. (Am. Countercl. ¶ 8, ECF No. 25).[2] The PSA created the AMRESCO Residential Securities Corporation Mortgage Loan Trust 1997-3 (the "Trust") and established the rights and responsibilities of the contracting parties, including the right to indemnification. (Id.). The PSA also appointed Option One as one of the Trust's mortgage loan servicers ("Servicers"), a role Option One fulfilled until April 2008 when it exercised its right under the PSA to assign its contractual obligations to a new mortgage servicer, AH Mortgage Acquisition Co., Inc. ("AH Mortgage"). (Id. ¶ 64). The Bank of New York Mellon in its individual capacity ("BNYM") has never been a party to the PSA. (Id. ¶ 8).

In 1977, non-party Raymond T. Berry ("Berry") became the owner of a property located at 3420 Berwyn Avenue in Baltimore, Maryland (the "Property"). (Id. ¶ 10). On March 21, 1997, Berry borrowed $53,950 from the Summit Mortgage Group, secured by the Property and evidenced by a note and deed of trust (the "Mortgage"). (Id.). Option One purchased the Mortgage on April 29, 1997 and sold it on June 17, 1997. (Compl. Declaratory J. ["Compl."] ¶ 7, ECF No. 1). It was later securitized as part of the Trust on September 17, 1997. (Id.). The Mortgage is one of hundreds of mortgage loans that were sold to the Trust. (Am. Countercl. ¶ 11). In 1998, Berry defaulted on the Mortgage. (Id. ¶ 12). On June 18, 1999, the Trust purchased the Property at a foreclosure auction. (Id.

---

discusses facts not alleged in the Amended Counterclaim, they are uncontroverted and viewed in the light most favorable to Defendants/Counter-Plaintiffs.

    [2] The PSA is publicly available at https://sec.edgar-online.com/amresco-residential-securities-corp-mort-%20loan-trust-1997-3/8-k-current-report-filing/1997/10/01/section9.aspx.

¶ 39). The Property thus became a Trust asset that Option One, as one of the Servicers, was responsible for maintaining under the terms of the PSA. (Id. ¶¶ 39, 95). In March 2001, the Trust sold the Property to Winston Calloway. (Id. ¶ 44).

Dwight Raney, a former tenant of a unit located at the Property, claims that during the period between June 1999 and 2001, he was injured through exposure to lead paint at the Property. (Id. ¶¶ 51–54). On November 9, 2015, Raney sued Berry, Calloway, and The Bank of New York Mellon in its individual capacity ("BNYM") in the Circuit Court for Baltimore City, Maryland (the "Raney Case"), seeking compensation for those injuries. (Id. ¶ 54); see also Raney v. Berry, No.: 24-C-15-005604 LP (Cir.Ct.Balt.Cnty.Md. filed Nov. 9, 2015). Raney alleged the Property was owned and/or operated by BNYM during the relevant time frame. (Id. ¶ 55).

During the litigation, BNYM denied all liability to Raney, arguing that it never owned, operated, maintained, or otherwise controlled the Property in its individual capacity. (Id. ¶ 56). BNYM further argued that the correct legal entity was BNYM as Trustee. (Id. ¶ 59). BNYM subsequently filed a third-party complaint against Option One for common law indemnification, contractual indemnification, and contribution. (Id. ¶ 69). Option One moved for summary judgment, but the Circuit Court denied its motion. (Id. ¶¶ 71–72). With trial approaching and Option One refusing to indemnify BNYM, BNYM and BNYM as Trustee resolved the Raney Case, but not before incurring attorneys' fees and litigation costs.[3] (Id. ¶¶ 70, 74).

---

[3] The Amended Counterclaim states that the case was settled but does not contain details about the settlement.

In their Amended Counterclaim, Defendants add a host of allegations regarding Option One's alleged negligence. For example, Defendants first allege that Option One ought to have worked with Berry, in accordance with its authority under the PSA, to develop a payment plan to cure the delinquencies on the Mortgage. (Am. Countercl. ¶ 13). According to Defendants, "Option One could, and should, have developed a loss mitigation plan with Berry allowing him to cure the delinquency, in part through the rental income he was receiving." (Id. ¶ 15). This would have prevented the Trust from purchasing the Property at all, which in turn would have prevented it from incurring liability to Raney. (Id. ¶¶ 15, 27). Defendants allege that Option One's failure to pursue loss mitigation options with Berry was negligent and inconsistent with the requirements of the PSA and with mortgage servicing industry standards. (Id. ¶¶ 26–30).

Defendants next allege that Option One negligently failed to seek possession of, secure, and inspect the Property for environmental hazards, including lead-based paint, prior to the Trust purchasing the property at the foreclosure sale. (Id. ¶¶ 33–38). As Defendants explain, the Property was built in 1920, and Option One therefore should have known that there was a substantial likelihood that it would contain lead-based paint. (Id. ¶ 33). According to Defendants, despite this known risk, "Option One never conducted a visual inspection of the Property or ordered an environmental inspection of the Property, despite being required to do so under the PSA and mortgage servicing industry standards." (Id. ¶ 36). In sum, "Option One negligently failed to act in the best interest of the [Trust]" by failing to "inspect the Property, test the Property for the presence of lead-based paint,

nor conduct any environmental remediation of lead-based paint after the [Trust] purchased the Property, as required by the PSA." (<u>Id.</u> ¶ 49).

Defendants assert that following Option One's negligent omissions, the Trust purchased the Property without the benefit of an inspection. (<u>Id.</u> ¶ 39). As a result of the purchase, BNYM as Trustee gained equitable ownership of the Property, a status that later prompted "the Circuit Court for Baltimore City [to deem] BNYM as Trustee to be 'owner' of the Property under the Baltimore City Housing Code at the time of the foreclosure sale, and therefore responsible for the abatement of lead paint at the Property." (<u>Id.</u> ¶ 40). Thereafter, during the period Option One continued to be responsible for maintaining the Property, "Raney ingested and consumed paint and dust containing lead and lead pigment while residing at and/or visiting the Property[.]" (<u>Id.</u> ¶ 51).

## B.  **Procedural History**

On September 24, 2019, Option One filed the present action against BNYM in its individual capacity and as Trustee. (ECF No. 1). Option One seeks a declaration that it has no duty or obligation to indemnify BNYM in its individual capacity or as Trustee for fees incurred in defending the Raney Case. (Compl. ¶¶ 28–39; <u>id.</u> at 11).

On November 11, 2019, Defendants filed an Answer and Counterclaim against Option One. (ECF No. 8). On December 9, 2019, Option One filed its Motion to Dismiss Counterclaim. (ECF No. 11). Defendants filed an Opposition on December 30, 2019. (ECF No. 14). On January 14, 2020, Option One filed a Reply. (ECF No. 15).

On September 3, 2020, the Court granted Option One's Motion to Dismiss Defendants' original Counterclaim. (ECF Nos. 16, 17). The Court rejected Option One's

argument that it was not subject to contractual indemnification because it is no longer a Servicer under the PSA and was not a Servicer at the time the Raney Case was filed. (See Sept. 3, 2020 Mem. Op. ["Mem. Op."] at 5–9, ECF No. 16). The Court further rejected Option One's argument that it was not subject to tort-based indemnification because Raney sued BYNM individually, rather than BNYM as Trustee, and BNYM therefore ought to have extricated itself from the litigation. (Id. at 11). The Court nevertheless granted Option One's Motion as to all three counts of Defendants' Counterclaim upon finding that Defendants had failed to adequately allege that Option One was negligent and that its negligence led to the Raney Case and Defendants' eventual settlement with Raney. (Id. at 9–13).

On November 6, 2020, Defendants moved for leave to file an amended counterclaim. (ECF No. 22). The Court granted Defendants' Motion and docketed the Amended Counterclaim on November 23, 2020. (ECF Nos. 24, 25). The Amended Counterclaim alleges: contractual indemnification to BNYM as Trustee (Count I); common law indemnification as to BNYM in its individual capacity (Count II); and common law indemnification as to BNYM as Trustee (Count III). (Am. Countercl. ¶¶ 76–143). BNYM requests all damages, costs, expenses, and attorneys' fees incurred in the Raney Case, plus interest, along with its costs, expenses, and attorneys' fees in the instant case. (Id. at 24, 29, 34).

On December 18, 2020, Option One filed its Motion to Dismiss Amended Counterclaim and Motion for Entry of Final Declaratory Judgment (ECF No. 28).

Defendants filed an Opposition on January 15, 2021. (ECF No. 29). On February 12, 2021,

Option One filed a Reply. (ECF No. 34).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint,"

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City</u>

<u>of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). When reviewing a Rule 12(b)(6) motion

to dismiss a counterclaim, "[t]his Court applies the same standard of review that would be

applied to a Rule 12(b)(6) motion to dismiss a complaint." <u>First Data Merch. Servs. Corp.</u>

<u>v. SecurityMetrics, Inc.</u>, No. RDB-12-2568, 2013 WL 6234598, at *3 (D.Md. Nov. 13,

2013) (citing <u>Shoregood Water Co. v. U.S. Bottling Co.</u>, No. RDB-08-2470, 2010 WL

1923992, at *1–2 (D.Md. May 11, 2010)).

A complaint fails to state a claim if it does not contain "a short and plain statement

of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not

"state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing

<u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S.

at 555). Though the plaintiff is not required to forecast evidence to prove the elements of

the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## B.   Analysis

### 1.   September 3, 2020 Opinion

As an initial matter, the Court reiterates two conclusions from its September 3, 2020 Memorandum Opinion: (1) "BNYM plausibly alleges that Option One, not Ocwen, was the Servicer responsible for indemnification because Option One was responsible for managing and otherwise preserving the Property from 1999 to 2001—the time period that Raney was allegedly injured at the Property," (Mem. Op. at 9); and (2) "[w]hether or not Raney should have named the Trust or BNYM individually has no bearing on Option One's liability to BNYM." (Id. at 11). In Sections III.D and III.E of its Motion, Option One nevertheless rehashes certain arguments precluded by these conclusions in the Court's September 3 Opinion. (See Mem. Law Supp. Mot. Dismiss Am. Countercl. & Mot. Entry

Final Declaratory J. ["Mot. Dismiss"] at 19–22, ECF No. 28-1). For the reasons set forth in its September 3 Opinion, the Court rejects these arguments.

### 2.    Averments Based on Information and Belief

Option One argues that Defendants' Amended Counterclaim must fail because it is "replete with factual averments based upon information and belief" that are inappropriate because "it is clear that Trustee and BNYM did not make inquiry 'reasonable under the circumstances' as required by Federal Rule of Civil Procedure 11(b)." (Mot. Dismiss at 12). According to Option One, Defendants have access to the relevant records and could have gained additional information during discovery in the Raney Case. Similarly, Option One argues that Defendants' vague references to "servicing industry standards" are "disingenuous" and "inexcusable" because the specific standards are ascertainable by Defendants but not identified in the Amended Counterclaim. (Mot. Dismiss at 13). As a result, Option One argues that these assertions are not well-pleaded and should be disregarded by the Court in determining whether Defendants have met their burden under Rule 12(b)(6).

Option One is correct that complaints filed in this Court are required to satisfy Federal Rules of Civil Procedure 8 and 11—among others—in order to survive a motion to dismiss under Rule 12(b)(6). See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). The Court finds, however, that the Amended Counterclaim does not appear to be in violation of Rule 11. First, pleading "upon information and belief" is appropriate where "the evidence needed to prove these claims is within the [defendant's] control." Midshore Riverkeeper Conservancy, Inc. v. Franzoni, 429 F.Supp.3d 67, 80 (D.Md. 2019). Option

One broadly asserts that BNYM as Trustee "has had, and continues to have, access to available servicing records" and that BNYM "had ample opportunity to seek discovery" in the Raney Case "to the extent that it needed records beyond those to which it is entitled under the PSA." (Mot. Dismiss at 12). But Option One ignores several categories of documents, identified by Defendants in their Opposition, outside the scope of the servicing records that would establish their claims premised on information and belief. (See Opp'n Mot. Dismiss Am. Countercl. & Mot. Entry Final Declaratory J. ["Opp'n"] at 9–11, ECF No. 29). The Court is similarly unpersuaded by Option One's sweeping assertion that Defendants' failure to possess all relevant documents is "inexcusable" because Defendants had the opportunity to seek discovery in a separate and now years-old litigation. Accordingly, the Court does not find that Defendants have run afoul of Rule 11 through making factual averments based on information and belief.

The Court also rejects Option One's argument that Defendants violated Rule 11 by making general references to mortgage servicing industry standards to support their position that Option One acted in a negligent manner. While it may be true that the Amended Counterclaim could provide additional detail, the references are more than sufficient to satisfy the Rule 8 standard of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); see also Hearn Insulation & Improvement Co., Inc. v. Bonilla, No. AW-09-990, 2009 WL 10687228, at *2 (D.Md. June 4, 2009) ("Under Rule 12(b)(6), [plaintiff] is not required to specifically and exhaustively state every fact that supports its claim."). Nor do general references to industry standards run afoul of the Rule 11 requirement that parties perform an "inquiry reasonable under the

circumstances." Indeed, this Court and other courts within the Fourth Circuit have repeatedly permitted complaints to move forward based on general allegations of noncompliance with industry standards. See, e.g., Diamond Beach Condo. Ass'n v. Restoration Eng'g, Inc., No. WDQ-05-3212, 2007 WL 9711738, at *3 (D.Md. Jan. 11, 2007) (relying in part on unspecific allegations in complaint that defendant was "not compliant with industry standards" in decision denying Rule 12(b)(6) motion); Valley Proteins, Inc. v. Mid-S. Steam Boiler & Eng'g Co., No. 2:17CV19, 2017 WL 11507175, at *3 (E.D.Va. May 12, 2017) (finding that it was sufficient for plaintiff to "specif[y] that the applicable standards are the ones concerning thermal processing" and that if defendant was "suggesting that no such standard exists, that is a question of fact not properly decided on a motion to dismiss, where the Court presumes the truth of the pled facts"); Simons v. Wal-Mart Stores E., L.P., No. 8:11-CV-03180-JMC, 2013 WL 393998, at *4 (D.S.C. Jan. 31, 2013) ("At this stage of the litigation, the fact that Simons has not identified a particular industry standard does not prevent him from exploring the existence and possible breach of such standards." (citing Eaton Corp. v. Trane Carolina Plains, 350 F.Supp.2d 699, 703 (D.S.C. 2004))). The Court finds these decisions persuasive and finds that Defendants' generalized references to mortgage servicing industry standards are appropriate at this stage of the litigation.

### 3.     Contractual Indemnification (Count I)

Indemnification may arise through contract. See Pulte Home Corp. v. Parex, Inc., 942 A.2d 722, 730 (Md. 2008); Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 15 (2d Cir.1993). Here, BNYM as Trustee seeks contractual indemnification, noting that it and

Option One were parties to the PSA, which required Option One, as Servicer, to indemnify and hold the Trustee harmless "against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses" arising out of Option One's negligent failure to perform its duties as Servicer. (PSA § 8.30). BNYM as Trustee further argues that it incurred damages because it sought to defend the Raney Case and became a party to the resolution.

As set forth in the Court's September 3, 2020 Memorandum Opinion, "[t]he limiting language in the PSA's indemnification clause is dispositive. Pursuant to § 8.30, the Servicer is obligated to indemnify the Trust for claims arising out of its negligent failure to perform its duties under the PSA." (Mem. Op. at 13). Thus, to the extent that Defendants have adequately alleged that Option One was negligent in its performance of its duties under the PSA, their contractual indemnification claim must survive. At bottom, the Court finds that Defendants' allegations regarding Option One's negligence are sufficient to state a claim upon which relief may be granted and will deny Option One's Motion as to this count.

For its part, Option One argues that its failure to engage in loss mitigation efforts could not have constituted breached a duty it owed to Defendants because any such efforts were discretionary under the PSA. (See PSA § 8.02). However, the PSA provided Servicers discretion to seek such arrangements in conjunction with other charges, including directions that the Servicer comply with industry standards and act in the best interests of the Trust. (See, e.g., Am. Countercl. ¶¶ 13–14, 17; PSA § 8.01 (requiring Option One to "service the loans generally in accordance with standard industry practices applicable to

servicing similar loans"); PSA § 8.32 (requiring Option One to "perform its servicing functions with respect to the Mortgage Loans in the best interests of and for the benefit of the Owners"). Moreover, Section 8.13 of the PSA permitted foreclosure for loans "as to which no satisfactory arrangements can be made for collection of Delinquent payments." This language arguably created a duty for Option One to ensure that this condition precedent—that no arrangement could be made to collect the delinquent payments—was met prior to the Trust purchasing the Property. That same section permits a Servicer to rent a property to the extent the Servicer deems doing so "to be in the best interest of the Owners for the period prior to the sale of such REO Property." (PSA § 8.13). The Court finds that Defendants have plausibly alleged that these provisions of the PSA created a duty on the part of Option One to engage in loss mitigation efforts prior to purchasing the Property.

Option One also makes much of certain language contained in Section 8.13 of the PSA, which appears to only require a Servicer to conduct an environmental inspection of the Property "in the event any responsible officer of a Servicer has actual knowledge that a Property is in any way affected by hazardous or toxic substances or wastes[.]" Because the Complaint does not contain an allegation that it had actual knowledge, Option One reasons, it had no duty to inspect and, as a result, any allegations that it breached such a duty fail to state a claim.

This argument fails for two reasons. First, the allegations of negligence contained in the Amended Counterclaim arise from at least three omissions by Option One: (1) its failure to engage in loss mitigation efforts with Berry; (2) its failure to take immediate possession of the Property following Berry's default; and (3) its failure to conduct an

inspection prior to the Trust's purchase of the Property. Option One's argument only addresses the last subject of Defendants' allegations; thus, even if the Court were persuaded by the argument, Defendants' claim could survive based on the remaining allegations of negligence.

Second, Section 8.13 does not provide that a Servicer's "actual knowledge" of hazardous substances is the only circumstance under which an environmental inspection may be sought. Rather, Section 8.13 states that if "a Servicer has actual knowledge . . . such Servicer shall cause an environmental inspection or review of such Property to be conducted[.]" Limiting the duty to inspect to only those circumstances, however, is arguably inconsistent with charges contained in other sections of the PSA requiring a Servicer to comply with industry standards and act in the best interests of the Trust. (See, e.g., Am. Countercl. ¶¶ 13–14, 17; PSA § 8.01 (requiring Option One to "service the loans generally in accordance with standard industry practices applicable to servicing similar loans"); PSA § 8.32 (requiring Option One to "perform its servicing functions with respect to the Mortgage Loans in the best interests of and for the benefit of the Owners"). Option One may be able to establish that its decision not to inspect the Property or to engage in loss mitigation efforts was in accordance with standard industry practices and in the best interest of the Trust. But, until then, BNYM as Trustee has plausibly alleged that Option One breached one or more duties that Option One owed and that BNYM as Trustee suffered harm as a result. At this stage of the litigation, that suffices for this count to survive Option One's Motion.

**4.      Common Law Indemnification – BNYM (Count II)**

BNYM argues it is entitled to tort-based indemnification from Option One because Option One was negligent in its duties with respect to the Property. As in its September 3, 2020 Memorandum Opinion, the Court will analyze these claims under Maryland law.[4] The Court of Appeals of Maryland has described the State's two forms of common law indemnification as follows:

> A right of indemnity may also arise by implication, either of fact or by law. See Franklin v. Morrison, 350 Md. 144, 154, 711 A.2d 177, 182 (1998); Hanscome v. Perry, 75 Md.App. 605, 615, 542 A.2d 421, 426 (1988). A right of indemnity implied in fact may arise from a special relationship between the parties, usually contractual in nature, or from a course of conduct. As pointed out in Hanscome, not every contractual relationship will produce an implied indemnity. Rather, as noted in Araujo v. Woods Hole, Martha's Vineyard, Etc., 693 F.2d 1, 2–3 (1st Cir. 1982), "a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties."
>
> Finally, the right may be an equitable one implied by law. In Franklin v. Morrison, supra, 350 Md. at 154, 711 A.2d at 182, we observed that this third form of indemnity, which we characterized as tort indemnity, may exist between persons liable for a tort. We said that the basis of it "is restitution, and the concept that one person is unjustly enriched at the expense

---

[4] In diversity actions, a federal court must apply the law of the forum state, including its choice of law rules. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). For tort-based claims, Maryland applies the law of the state where the alleged harm occurred. Johnson-Howard v. AECOM Special Missions Servs., Inc., 434 F.Supp.3d 359, 371 (D.Md. 2020). Because the alleged events in the Raney Case and a substantial part of the events or omissions giving rise to the Amended Counterclaim occurred in Maryland, the substantive tort law of Maryland law governs BNYM's tort-based indemnification claims. See Hauch v. Connor, 453 A.2d 1207, 1209 (Md. 1983).

of another when the other discharges liability that it should be his responsibility to pay." <u>Id.</u>, quoting from <u>Restatement (Second) of Torts</u>, § 886B cmt. c. (1979).

<u>Pulte Home Corp.</u>, 942 A.2d at 730–31. BNYM does not specify which form of common law indemnification it seeks; accordingly, the Court will analyze its allegations under both categories.

As the Court concluded in its September 3, 2020 Memorandum Opinion, "BNYM does not allege any facts suggesting any special factors or a special relationship between it and Option One. . . . Without any such special factors or a special relationship, BNYM would not be entitled to indemnification based on either Maryland or New York's 'implied in fact' doctrine." (Mem. Op. at 10–11 n.8). BNYM has added no additional allegations in its Amended Counterclaim to articulate a special relationship between the parties. Accordingly, there is no basis for implied-in-fact indemnification as to BNYM.

BNYM has also failed to state a claim for implied-in-law indemnification. As Option One correctly notes, "[t]ort-based indemnification requires that both the indemnitor and indemnitee be liable in tort to the original plaintiff." (Reply Mem. Supp. Mot. Dismiss Am. Countercl. & Mot. Entry Final Declaratory J. ["Reply"] at 4, ECF No. 34 (citing Mem. Op. at 12)); <u>see</u> <u>Pulte Home Corp.</u>, 942 A.2d at 730 (finding that implied-in-law indemnification "may exist between persons liable for a tort"); <u>Franklin</u>, 711 A.2d at 184 ("If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of liability." (quoting Restatement (Second) of Torts § 886B(1) (Am. L. Inst. 1979))). Here, "BNYM in its individual capacity

denied all liability to Raney" and "at all times argued that it never owned, operated, maintained, or had anything to do with the Property in its individual capacity." (Am. Countercl. ¶ 56). To the extent BNYM maintains that it is not liable in tort to Raney, it cannot seek implied-in-law indemnification in connection with the alleged wrongdoing underlying his claims.

BNYM cites several decisions by New York courts in support of its position that it may seek indemnification despite settling the Raney Case and admitting no liability. See Casey ex rel. Casey v. Ryder Truck Rental, Inc., No. 00 CV 2856 (CLP), 2005 WL 1150228, at *21 (E.D.N.Y. May 16, 2005); Zurich Am. Ins. Co. v. Tower Nat'l Ins. Co., 159 A.D.3d 418, 419 (N.Y.App.Div. 2018); Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr., 74 A.D.3d 32, 40 (N.Y.App.Div. 2010). Defendants' common law indemnification claims, however, are analyzed under Maryland law, and these cases are inapposite. BNYM also cites certain cases from Maryland courts that it asserts support its position that it may pursue an indemnification claim despite resolving the Raney Case through a settlement. See Shelton v. United States, No. PWG-14-2031, 2017 WL 679214, at *7 (D.Md. Feb. 21, 2017); Chesapeake Bay Found., Inc. v. Weyerhaeuser Co., No. PWG-11-47, 2015 WL 2085477, at *11 (D.Md. May 4, 2015); Whiting-Turner Contracting Co. v. Coupard, 499 A.2d 178, 182 (Md. 1985). These cases, however, stand for the proposition that a claim for indemnification does not ripen until a party incurs costs associated with resolving the underlying claims. They do not reject or call into question the finding, clearly stated by the Court of Appeals of Maryland, that implied-in-law indemnification only exists "between persons liable for a tort." Pulte Home Corp., 942

A.2d at 730. The Court also declines to do so on this occasion. Because BNYM in its individual capacity has not articulated a claim for implied-in-fact or implied-in-law indemnification, the Court will dismiss Count II of the Amended Counterclaim.

### 5.    Common Law Indemnification – BNYM as Trustee (Count III)

As with BNYM in its individual capacity, BNYM as Trustee does not specify which form of common law indemnification it seeks; accordingly, the Court will analyze its allegations under both categories.

To start, the Court notes that BNYM as Trustee has failed to state a claim for implied-in-law indemnification for the same reasons it finds that BNYM in its individual capacity failed to do so. (See Am. Countercl. ¶ 59 ("BNYM in its individual capacity also argued that it had no liability in either its individual or trustee capacities.")). Nowhere in the Amended Counterclaim do Defendants allege that BNYM as Trustee was jointly liable for the tort alleged in the Raney Case. Accordingly, its implied-in-law indemnification claim must fail.

The Court also finds that BNYM as Trustee has failed to state a claim for implied-in-fact indemnification. As set forth above, "[a] right of indemnity implied in fact may arise from a special relationship between the parties, usually contractual in nature, or from a course of conduct." Pulte Home Corp., 942 A.2d at 730. It is true that in this case, the PSA created a special relationship between BNYM as Trustee and Option One. Option One argues, however, that BNYM as Trustee cannot maintain a claim of common law indemnification because the PSA specifically addresses the scope of indemnification between the parties. See Nat'l Lab. Coll., Inc. v. Hillier Grp. Architecture N.J., Inc., 739

F.Supp.2d 821, 831 (D.Md. 2010) ("[Q]uasi-contractual remedies such as implied indemnification are generally unavailable when a contract exists covering the same subject matter." (citations omitted)). Defendants counter that they are permitted to plead "in the alternative," <u>see</u> Fed.R.Civ.P. 8(d)(2), and courts across the country have permitted parties in this position to simultaneously advance claims of contractual and common law indemnification. <u>See, e.g.</u>, <u>Holt v. Walsh Grp.</u>, 316 F.Supp.3d 274, 281–82 (D.D.C. 2018); <u>Devs. Sur. & Indem. Co. v. Renaissance Valley Farms, LLC</u>, 36 F.Supp.3d 742, 753 (W.D.Ky. 2014); <u>Cincinnati Ins. Co. v. Gilbert</u>, No. 4:19-CV-00245-KOB, 2019 WL 4686350, at *1 (N.D.Ala. June 6, 2019).

The Court agrees with Option One. While Defendants cite out-of-district cases permitting implied indemnification claims to proceed alongside contractual indemnification claims, this Court has repeatedly held that allowing such claims to proceed in tandem would be "incongruent." <u>See</u> <u>Nat'l Lab. Coll.</u>, 739 F.Supp.2d at 831 (explaining that "[a]ny implied common law indemnification scheme would either contradict or add to these clearly defined circumstances in the contract"); <u>see also</u> <u>Bayles v. Marsh Realty & Assocs., LLC</u>, No. DKC-20-3322, 2021 WL 1198144, at *4 (D.Md. Mar. 30, 2021) ("[Defendants'] claims of general indemnification [are] precluded by the contractual provision governing such claims."); <u>Hanover Ins. Co. v. Engineered Sys. All., LLC</u>, No. PX-15-112, 2019 WL 1002603, at *9 (D.Md. Mar. 1, 2019) ("The lack of implied indemnity is further supported by the express contractual indemnity provision, which defines the scope of the Third-Party Defendants' indemnity obligations."); <u>Woods v. Dolgencorp, LLC</u>, No. TJS-15-3249, 2017 WL 4712198, at *2 (D.Md. Oct. 18, 2017)

("Any claim for implied indemnification would necessarily be 'incongruent with the express provisions' of the lease agreement." (quoting <u>Nat'l Lab. Coll.</u>, 739 F.Supp.2d at 831)); <u>Chesapeake Bay Found.</u>, 2015 WL 2085477, at *10 ("Here, also, the express contractual language defines [defendant's] duty to indemnify, and [plaintiff] cannot prevail on a claim for common law indemnification."). For these reasons, the Court will dismiss BNYM as Trustee's common law indemnification claims.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Option One's Motion to Dismiss Amended Counterclaim and Motion for Entry of Final Declaratory Judgment (ECF No. 28). A separate Order follows.

Entered this 27th day of July, 2021.

_____/s/_____
George L. Russell, III
United States District Judge

20